UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SHLOMO KLEIN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SIX FLAGS ENTERTAINMENT CORPORATION, JAMES REID-ANDERSON, and MARSHALL BARBER,<br><br>Defendants. | Civil Action No. 3:20-cv-00460<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiff Shlomo Klein ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Six Flags Entertainment Corporation ("Six Flags" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## INTRODUCTION

1. This is a federal securities class action on behalf of a class consisting of all persons or entities other than Defendants that purchased or otherwise acquired Six Flags securities between

April 25, 2018 and January 9, 2020, inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2. Headquartered in Grand Prairie, Texas, Six Flags is the largest regional theme park operator in the world, with 26 parks across North America. In addition to generating revenue by operating its parks throughout North America, Six Flags also earns revenue pursuant to international licensing agreements to assist third parties in the development and management of Six Flags-branded parks outside of North America. As compensation for exclusivity, brand licensing rights, and design, development and management services, the Company receives fees during the planning, design and development phase of each park and then would receive royalties and management fees once the park is operational.

3. On June 23, 2014, Six Flags announced the signing of an agreement to build multiple Six Flags-branded theme parks in China. Six Flags partnered exclusively with Riverside Investment Group Co. Ltd. ("Riverside"), a Chinese real estate developer, that would provide the capital investment for future developments in China. The Company emphasized expansion of its international licensing agreements as one of its key strategies to achieve revenue growth, and Six Flags' agreements with Riverside to develop parks in China were of particular importance to investors because they represented the largest potential driver of growth in this strategic initiative.

4. By May 29, 2018, Six Flags had announced plans with Riverside to develop 11 parks across three locations in China.

5. Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically,

Defendants made false and/or misleading statements and/or failed to disclose that: (i) Six Flags' licensing agreements with Riverside would not result in the benefits that Defendants had publicly represented; and (ii) as a result, the Company's public statements were materially false and misleading at all relevant times.

6.     The truth began to emerge on February 14, 2019, when the Company surprised investors by announcing a negative revenue adjustment of $15 million in the fourth quarter of 2018 related to the Company's agreements with Riverside due to delays in the expected opening dates of some of the parks in China, which the Company blamed on macroeconomic issues in China. As a result, Six Flags reported a 38% decline in the Company's sponsorship, international agreements and accommodations revenue compared to the fourth quarter of 2017.  Six Flags also told investors that it expected weaker-than-anticipated quarterly revenue from its agreements with Riverside in 2019 and 2020.

7.     On these disclosures, the Company's stock price fell $9.00 per share, or 14.09%, to close at $54.87 per share on February 14, 2019.

8.     On October 23, 2019, Six Flags again postponed the timing of its park openings in China, stating that "there's a very high likelihood going forward that we will see changes in the timing of park openings" and "it's unrealistic to think it's going to be exactly as we've outlined." As a result, the Company reported a 26% decline in sponsorship, international agreements and accommodations revenue for the third quarter of 2019 compared to the third quarter of 2018.

9.     On these disclosures, Six Flags' stock price fell $6.35 per share, or 12.4%, to close at $44.88 per share on October 23, 2019.

10.    Then, on January 10, 2020, before the market opened, the Company revealed that the future of its China projects was in jeopardy.  In particular, the Company announced that the

development of the Six Flags-branded parks in China continued to encounter challenges and had not progressed as expected. The Company also reported that Riverside continued to face significant challenges due to the macroeconomic environment and declining real estate market in China, which caused Riverside to default on its payment obligations to Six Flags. Furthermore, the Company told investors that, in the fourth quarter of 2019, it would realize no revenue from its agreements with Riverside and expected a negative $1 million revenue adjustment related to those agreements. The Company also announced one-time charges totaling approximately $10 million related to Riverside's default.

11. On these disclosures, Six Flags' stock price fell $7.80 per share, or 17.82%, to close $35.96 per share on January 10, 2020.

## JURISDICTION AND VENUE

12. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

13. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

14. Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b). Six Flags is headquartered in this Judicial District, Defendants conduct business in this Judicial District, and a significant portion of Defendants' actions took place within this Judicial District.

15. In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

16. Plaintiff, as set forth in the attached Certification, acquired Six Flags securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

17. Defendant Six Flags is incorporated in Delaware, with principal executive offices located at 924 Avenue J East, Grand Prairie, Texas. Six Flags' common stock trades on the New York Stock Exchange ("NYSE") under ticker symbol "SIX."

18. Defendant James Reid-Anderson ("Anderson") served as Six Flags' Chairman, President and Chief Executive Officer ("CEO") from July 2017 until his retirement on November 18, 2019. From February 2016 to July 2017 Defendant Anderson served as Executive Chairman of Six Flags and from August 2010 to February 2016 Defendant Anderson served as Chairman, President and Chief Executive Officer of Six Flags.

19. Defendant Marshall Barber ("Barber") has served as Six Flags' Chief Financial Officer since February 2016.

20. Defendants Anderson and Barber are sometimes collectively referred to herein as the "Individual Defendants."

21. The Individual Defendants possessed the power and authority to control the contents of Six Flags' SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of Six Flags' SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with Six Flags, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then

materially false and misleading.  The Individual Defendants are liable for the false statements and omissions pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

22. Six Flags is the world's largest regional theme park operator, with more than two dozen parks across North America.  In addition to generating revenue through the operation of its parks in North America, Six Flags also earns revenue pursuant to international licensing agreements to assist third parties in the development and management of Six Flags-branded parks outside of North America.  Pursuant to these agreements, the Company receives fees during the planning, design and development phase of each park and then would receive royalties and management fees once the parks opened.

23. In late June 2014, Six Flags announced the signing of an agreement with a Chinese real estate developer, Riverside, to build multiple Six Flags-branded theme parks in China.  Riverside would provide the capital investment for future developments in China and would pay Six Flags consulting fees during the development period of each park and then licensing and management fees once the parks opened.  While the Company did not disclose the detailed terms of the arrangements for any of their international licensing agreements, Six Flags represented that each international park would contribute $5 million to $10 million annually to EBITDA pre-opening, and then $10 million to $20 million annually post-opening.

24. The Company emphasized the expansion of its international licensing agreements as one of its key strategies to achieve revenue growth, and Six Flags' agreements with Riverside to develop parks in China represented the largest potential driver of growth in this strategic initiative.  For example, during the Company's first quarter 2018 earnings call on April 25, 2018, Six Flags' then-CEO, James Reid-Anderson, described the opportunity to expand the Company's

6

international agreements revenue, stating "China is the biggest of all, and the vision of both Six Flags and Riverside is to build multiple parks."

### Materially False and Misleading Statements Issued During the Class Period

25. The Class Period begins on April 25, 2018, when Six Flags held its first quarter 2018 earnings call. During the call, in describing the deals with Riverside to build parks in China, Defendant Anderson stated that "we will not be stopping at 10 parks, I can assure you that, and our partner is very excited about being able to expand further with us." Defendant Anderson touted Six Flags' "incredible partnership with Riverside" and assured investors that Riverside "has not only successfully navigated the regulatory environment in China before but will continue to do so going forward." He also told investors that "all our parks are progressing nicely towards their anticipated opening dates. And, hence, we've announced 3 more parks. We're very confident."

26. On July 25, 2018, Six Flags held its second quarter 2018 earnings call. On that call, Defendant Anderson again emphasized the Company's international licensing agreements with Riverside to develop Six Flags-branded parks in China, stating "[o]ur international licensing program is growing exponentially and providing additional diversification to our portfolio, and the opportunity for future growth remains very compelling." He also stated that "revenue from international licensing should accelerate further, as we continue to add new licensing arrangements and over the long-term begin opening parks." Defendant Anderson also stated that the Company's licensing agreements with Riverside "should super charge revenue growth" and touted Six Flags as "the ultimate growth and yield stock." During the call, Defendant Anderson also stated that "the timing of the parks remains exactly the same as previously disclosed."

27. On October 24, 2018, Six Flags held its third quarter 2018 earnings call. During the call, Defendant Anderson described its anticipated Chinese parks as "an incredible lineup of

new parks to come [with] a lot of revenue to come." Defendant Anderson also urged investors that "[t]his is [the] time to buy Six Flags shares."

### The Truth Begins to Emerge

28. The statements set forth above in ¶¶ 25-27 were materially false and misleading because Defendants misrepresented and failed to disclose the following adverse facts about the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and misleading statements and/or failed to disclose that: (i) Six Flags' licensing agreements with Riverside would not result in the benefits that Defendants had publicly represented; and (ii) as a result, the Company's public statements were materially false and misleading at all relevant times.

29. On February 14, 2019, the Company surprised investors by announcing a revenue adjustment of $15 million in the fourth quarter of 2018 related to the Company's agreements with Riverside due to delays in the expected opening dates of some of the parks in China, which the Company blamed on macroeconomic issues in China. As a result, the Company reported a 38% decline in the its sponsorship, international agreements and accommodations revenue compared to the fourth quarter of 2017. Six Flags also told investors that in addition to adjusting its revenue recognition to the newly expected project timelines, it expected weaker than anticipated quarterly revenue from its agreements with Riverside in 2019 and 2020.

30. In response to these disclosures, the Company's stock price fell $9.00 per share, or 14.09%, to close at $54.87 per share on February 14, 2019.

31. Six Flags downplayed the significance of these disclosures and continued to misrepresent the prospects of the development of its branded parks in China. In particular, during the Company's fourth quarter and full year earnings call on February 14, 2019, Defendant

8

Anderson assured investors that "[a]lthough the timing of the ensuing revenue adjustments is unfortunate, our partner in China remains fully committed to developing and opening these parks, and construction is continuing" and Riverside is "work[ing] through these macroeconomic issues." In addition, in response to an analyst's question regarding the financial health of Riverside, Defendant Barber assured investors that Riverside "has a lot of assets" and is in "great shape" financially.

32. Furthermore, on April 24, 2019, Six Flags held its first quarter 2019 earnings call. During the call, Defendant Anderson stated that "[w]e continue to work with our international partner in China, meeting government officials for each of our 3 park complexes, and we believe conditions in China have slowly begun to improve" and "we should not lose sight of the fact that these short-term delays and lumpy revenue patterns are not material in the context of the long-term opportunity."

33. On May 22, 2019, Defendant Barber represented Six Flags during the B. Riley FBR Institutional Investor Conference. During the call, Defendant Barber stated that "there's been struggles over the last 4 or 5 years that we've been working with [Riverside] that they've always managed to get through . . . [a]nd we're optimistic that he can get through this."

34. The statements set forth above in ¶¶ 31-33 were materially false and misleading because Defendants misrepresented and failed to disclose the following adverse facts about the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and misleading statements and/or failed to disclose that: (i) Riverside faced far more financial distress than disclosed to investors; ii) as a result, there was a high likelihood that Riverside would default on its payment obligations to the Company; (iii) the Company's international strategy, which relied predominantly on its exclusive

9

agreements with Riverside to develop Six Flags-branded parks in China to drive revenue growth, was significantly less promising than represented to investors; and (iv) as a result of the foregoing, Defendants' statements about the Company's business, operations and prospects lacked a reasonable basis.

35. On October 23, 2019, Six Flags revealed that "the Chinese market remains difficult, and we are likely to continue to recognize lumpy international agreements revenue until we see progress there from a macroeconomic, real estate and trade perspective." As a result, the Company again postponed the timing of its park openings in China, stating that "there's a very high likelihood going forward that we will see changes in the timing of park openings" and "it's unrealistic to think it's going to be exactly as we've outlined." The Company also revealed that it had continued to suspend revenue recognition related to four of its China parks in development.

36. In response to these disclosures, Six Flags' stock price fell $6.35 per share, or 12.4%, to close at $44.88 per share on October 23, 2019.

37. Then, on January 10, 2020, before the market opened, the Company revealed that the future of its China projects was in jeopardy. In particular, the Company announced that "[t]he development of the Six Flags-branded parks in China has encountered continued challenges and has not progressed as . . . [the Company] had expected." The Company also reported that Riverside "continues to face severe challenges due to the macroeconomic environment and declining real estate market in China," which caused Riverside to default on its payment obligations to Six Flags, and that the Company had delivered formal notices of default to Riverside. Six Flags also revealed that "the eventual outcome is unknown and could range from the continuation of one or more projects to the termination of all the Six Flags-branded projects in China." Furthermore, the Company told investors that, in the fourth quarter of 2019, it would realize no revenue from its

agreements with Riverside and expected a negative $1 million revenue adjustment related to those agreements that would offset a portion of the revenue from Six Flags' other international agreements. The Company also announced one-time charges totaling approximately $10 million related to Riverside's default.

38. In response to these disclosures, Six Flags' stock price fell $7.80 per share, or 17.82%, to close $35.96 per share on January 10, 2020.

39. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## CLASS ACTION ALLEGATIONS

40. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Six Flags securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

41. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Six Flags securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Six Flags or its transfer agent and may be notified of the

pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

42.  Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

43.  Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

44.  Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Six Flags;

- whether the Individual Defendants caused Six Flags to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Six Flags securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

45.  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden

of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

46. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

47. Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;
- Six Flags securities are traded in an efficient market;
- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;
- the Company traded on the NYSE and was covered by multiple analysts;
- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and
- Plaintiff and members of the Class purchased, acquired and/or sold Six Flags securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

48. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

49. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

# COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

50.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

51.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

52.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Six Flags securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Six Flags securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

53.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Six Flags securities. Such reports, filings, releases and statements were

materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Six Flags' finances and business prospects.

54. By virtue of their positions at Six Flags, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

55. Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Six Flags, the Individual Defendants had knowledge of the details of Six Flags' internal affairs.

56. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Six Flags. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Six Flags' businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Six Flags securities was artificially inflated throughout the Class Period. In ignorance of the

adverse facts concerning Six Flags' business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Six Flags securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

57. During the Class Period, Six Flags securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Six Flags securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Six Flags securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Six Flags securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

58. By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

59. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure

that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

60. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

61. During the Class Period, the Individual Defendants participated in the operation and management of Six Flags, and conducted and participated, directly and indirectly, in the conduct of Six Flags' business affairs. Because of their senior positions, they knew the adverse non-public information about Six Flags' misstatement of income and expenses and false financial statements.

62. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Six Flags' financial condition and results of operations, and to correct promptly any public statements issued by Six Flags which had become materially false or misleading.

63. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Six Flags disseminated in the marketplace during the Class Period concerning Six Flags' results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Six Flags to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Six Flags within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Six Flags securities.

64. Each of the Individual Defendants, therefore, acted as a controlling person of Six Flags. By reason of their senior management positions and/or being directors of Six Flags, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Six Flags to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Six Flags and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

65. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Six Flags.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury.

Dated:  February 24, 2020

                                                    Respectfully submitted,

                                                    */s/ Willie Briscoe*
                                                    WILLIE C. BRISCOE
                                                    State Bar Number 24001788

THE BRISCOE LAW FIRM, PLLC
12700 Park Central Drive, Suite 520
Dallas, TX 75251
Telephone: 972-521-6868
Facsimile: 281-254-7789
wbriscoe@thebriscoelawfirm.com

POMERANTZ LLP
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
Email: ahood@pomlaw.com

POMERANTZ LLP
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*